(8 App. Div. 288)

### SUGDEN et al. v. MAGNOLIA METAL CO.

(Supreme Court, Appellate Division, First Department. July 31, 1896.)

CONTRACTS—RESCISSION BY PARTIES—ELECTION.

Plaintiffs entered into a contract with defendant for the purchase of goods, and the exclusive right to sell in certain countries. The contract provided that, if plaintiffs should break the agreement in any particular, all their rights thereunder should cease. After plaintiffs had made payments under the contract, including part of the price of goods not delivered, disputes arose, and plaintiffs refused to receive any more goods, but afterwards offered to receive all the goods, and to pay the price thereof, and damages for the delay; but defendant insisted that plaintiffs, by their breach, had terminated the contract, but did not offer to return the advance payments made by plaintiffs. Plaintiffs assigned their claim for such advance payments, and the assignee sued defendant therefor. *Held*, that plaintiffs, by such assignment, were precluded from asserting that the contract was continued in force by defendant's retention of such money.

Appeal from special term, New York county.

Action by John Sugden and others against the Magnolia Metal Company. From an order denying a motion to continue a preliminary injunction restraining the defendant from interfering with their business, plaintiffs appeal. Affirmed.

On February 16, 1894, the plaintiffs, as trustees of a corporation to be formed, to be called the "Magnolia Anti-Friction Metal Company, of Great Britain, Limited" (styled the "English Company"), and the defendant (styled the "American Company"), entered into a contract whereby the former agreed to purchase of the latter 3,000,000 pounds of magnolia metal, at 10 cents a pound. Part of this amount, the contract recites, has been delivered and paid for. The unordered balance of 1,099 tons was to be delivered in 12 monthly installments, of not less than 92 tons each, commencing with the first of the ensuing March. The plaintiffs, however, were given the option of taking, instead, not less than 46 tons a month, in which case they were to pay, at or before the end of each month, four cents a pound upon the balance of metal necessary to make the purchase for that month .92 tons. If, on March 1, 1895, the plaintiffs should not have taken the whole 3,000,000 pounds, they were to take the balance in such quantities as they might choose, not less than one-fourth each quarter year from March 1, 1895. During the continuance of this agreement, the English Company obtained the sole right to sell the magnolia metal in England and all its dependencies except Canada, and many other countries specified, upon the continent and elsewhere. As soon as the English Company should have ordered and paid for the full 3,000,000 pounds of metal, and sent the American Company written notice that it would not avail itself of an option given it to require the American Company to take back part of the metal, the English Company became entitled to all the business which then existed, or might thereafter be developed by it, in the countries where it was licensed to sell; and the American Company contracted to execute all necessary instruments of transfer. If, on the other hand, the English Company should break the agreement in any partic-

ular, the American Company became entitled to take possession of its business, and the English Company agreed to relinquish it. This agreement was to be substituted for a prior agreement made March 25, 1891, upon the organization of the English Company; and, upon its incorporation, the prior agreement was to be canceled. The company was never organized, but subsequent correspondence between the parties gave plaintiffs, if they fulfilled the terms of the agreement, the same rights the company would have had. The plaintiffs had not ordered all of the metal on March 1, 1895; and on September 1, 1895, the second quarterly shipment day thereafter, a shipment of 126 tons was due. On August 24th the plaintiffs had written specifying where the metal was to be sent. Defendant was about to make this shipment when the first dispute between it and the plaintiffs arose. A suit brought by one Hoveler against Edward C. Miller, one of the defendant's officers, to annul an English patent upon the magnolia metal, was pending in the English courts. Defendant had agreed to defend this suit, as part of the agreement with the plaintiffs. It had retained English counsel, and a disagreement had arisen between them respecting the payment of a bill. At this time the solicitors threatened to withdraw from the action, whereupon, on September 12, 1895, plaintiffs cabled and wrote the defendant, refusing to accept the draft for the shipment which was about to be made, or to have further dealings with it, until satisfied that the solicitors would be paid and the defense of the suit continued. Defendant replied that it intended to fulfill all the conditions of its contract; that the plaintiffs' refusal to accept the draft was a breach on their part; and that it had stored the metal for the plaintiffs' account, and drawn for the amount. A long correspondence followed, during which the plaintiffs steadily adhered to their position, claimed damages on account of the defendant's failure to ship goods, and at no time consented to pay the contract price for the metal without conditions or deductions. The matter was subsequently placed in the hands of Mr. Constant, an American attorney, who, on February 28, 1896, served an unconditional offer to receive and pay for the whole balance of metal under the contract of February 16, 1894, and agreed to pay the damage caused by plaintiff's delay. The defendant, however, asserted that the plaintiffs had, by their breach, terminated the contract. At the time of the disagreement, in September, 1895, the defendant had in its possession advance payments upon metal not ordered by the plaintiffs during the year from March 1, 1894, to March 1, 1895, amounting to about $36,000. This sum it has not offered to return. Prior to the date of their offer to receive the unshipped metal, the plaintiffs assigned their claim to this sum to one Lawlor, who brought suit thereupon in the supreme court, New York county, and obtained an attachment against the defendant's property.

Argued before BARRETT, RUMSEY, PATTERSON, and INGRAHAM, JJ.

L. A. Gould, for appellants.
Samuel G. Metcalf, for respondent.

PER CURIAM. It appears by the moving papers that the defendant has taken the position of business rival of the plaintiffs in the sale of magnolia metal in territory reserved to the latter by the contract of February 16, 1894, and is striving to divert their business by the issuance of circulars, employment of agents, etc. These acts the court below has declined to interfere with. In order to determine whether the decision is correct, it is necessary to decide whether the plaintiffs have lost the exclusive right to the business built up by themselves by noncompliance with their contract. That the plaintiffs did, in fact, break their contract by a wrongful refusal to receive and pay for the metal they had agreed

to purchase, is now conceded. It is said, however, that the defendant did not elect to rescind the contract when the breach occurred, but, on the contrary, chose to keep it alive. That seems to be true. The action of the defendant in retaining the $36,000 of advances, which it had received under the contract, but for which it had given no equivalent, is not consistent with an intention to disaffirm. If the defendant did not intend to furnish the rest of the metal, it had no right to keep this sum, which was part of the purchase price thereof. It is probable, therefore, that the plaintiffs would have been, but for their own action, in a position to claim their rights under the contract—at least, their right to the business built up by them—as long as the defendant retained the advance payments. But they destroyed this right when they assigned to Lawlor their claim to the $36,000. That was a binding election to regard the contract as rescinded. This money belonged to the plaintiffs only in the event of the contract being wholly terminated, so that nothing more was to be done under it. If the contract was to be carried out further, and the remaining shipments made, then the money did not belong to the plaintiffs, and the defendant was entitled to its possession even before the rest of the metal should be shipped. The plaintiffs were to become entitled to the English business only by paying for the whole 3,000,000 pounds of metal. So far from doing this, they have sought to recover, or at least have transferred to another all their right to recover, part of the very money which the contract provided as a consideration for the acquisition of that business. It is plain that they thereby made a binding election, which deprived them of their right to the same.

It is claimed that the plaintiffs offered unconditionally to perform the contract before February 28, 1896, and at a date prior, so far as the record shows, to the assignment to Lawlor. In fact, however, there is no prior offer which can be regarded as an unconditional tender of performance. But, if it were otherwise, the Lawlor suit operated as a withdrawal of any such offer, and pledged the plaintiffs to a different line of conduct, defining for them, as it did, a different attitude.

The order should be affirmed, with costs.